UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID NELSON and REID NELSON,<br>    *Plaintiffs*,<br>      *v.*<br>MYRTLE BEACH COLLEGIATE SUMMER<br>BASEBALL LEAGUE, LLC,<br>    *Defendant*. | Civil No. 3:12cv1655 (JBA)<br><br><br>December 4, 2013 |

**RULING ON MOTION TO DISMISS OR TO TRANSFER VENUE**

Plaintiffs David and Reid Nelson bring this suit against Defendant Myrtle Beach Collegiate Summer Baseball League LLC ("Myrtle Beach") alleging violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq.* (Count One), breach of contract (Count Two), and fraud (Count Three) arising out of an agreement for Plaintiff Reid Nelson to participate in Defendant's summer 2012 baseball league. (*See* Compl. [Doc. # 1] ¶ 6.)  On May 1, 2013, Defendant moved [Doc. # 20] to dismiss this action for lack of personal jurisdiction and improper venue, or, in the alternative, to transfer the case to North Carolina.[1]  For the following reasons, the Defendant's motion to dismiss, and his alternative request to transfer venue, are denied.

I.      **Background**

Plaintiff David Nelson, and his son, Reid Nelson, are both residents of Wallingford, Connecticut.  (*See* Compl. ¶¶ 1–2.)  Defendant is a limited liability company organized pursuant to the laws of North Carolina, with its principal place of business in

---

[1] Plaintiffs originally brought claims against Martin Radford, the owner of Defendant Myrtle Beach, in addition to their claims against Defendant Myrtle Beach. (*See* Compl.)  However, when Mr. Radford moved to dismiss for lack of personal jurisdiction, Plaintiffs withdrew their claims against Mr. Radford and voluntarily dismissed him from this action.  (*See* Not. of Voluntary Dismissal [Doc. # 28].)

1

Asheville, North Carolina.  (*See id.* ¶ 3.)  Defendant organizes summer baseball camps for collegiate baseball players, marketing these programs nationwide and internationally, as an opportunity for collegiate baseball players to enhance their level of play and gain exposure in front of professional scouts.  (*See id.* ¶¶ 8, 10.)

In 2012, as a part of its marketing efforts, Defendant sent contracts for its summer baseball league to approximately 115 colleges in thirty-two states, including Connecticut.  (*See id.* ¶ 11.)  In the spring of 2012, Defendant told players that the league would consist of a six-week program capped at 220 players distributed on ten teams, and that participants would get to play baseball daily. (*See id.* ¶ 12.).  Shortly thereafter, Plaintiff Reid Nelson signed up for Defendant's summer 2012 league.  (*See id.* ¶ 13.)  As a part of Plaintiff's enrollment in the league, Defendant agreed to provide room and board for Plaintiff in South Carolina near the playing fields where games were held.  (*See id.* ¶ 14.)  Plaintiff David Nelson paid in full the fees and costs associated with the contract and covered the cost of his son's travel to and from South Carolina.  (*See id.* ¶ 15.)  Part of the fee he paid to Defendant included access to a website run by Defendant where he could watch his son play in league games.  (*See id.*)

Despite its representations regarding the size of the program, Defendant enrolled many more players than promised, and the league eventually consisted of 343 players who were divided into the same ten teams.  (*See id.* ¶ 16.)  This increase in team size resulted in a significantly reduced amount of playing time for each player enrolled in the camp.  (*See id.* ¶ 18.)  Plaintiffs were not informed that Defendant had increased the number of players in the league until Reid Nelson arrived in South Carolina.  (*See id.* ¶ 17.)  Further, the website Defendant agreed to provide for parents to watch the league's

games did not function properly.  (*See id.* ¶ 19.)  As a result of these problems, Plaintiff David Nelson requested a refund from Defendant.  (*See id.* ¶ 20.)  To date, however, no such refund has been paid.  (*See id.* ¶ 20.)

On June 14, 2012, David Nelson had a verbal argument with Defendant Myrtle Beach's owner, Martin Radford, regarding the increased size of the league and the problems with Defendant's website.  (*See id.* ¶ 21.)  After this argument, Mr. Radford contacted the Myrtle Beach Police and requested that they remove Reid Nelson from the baseball field where he was playing, claiming that he was trespassing.[2]  (*See id.*)   As a result of Defendant's request, the Myrtle Beach Police came to the field where Reid was playing and removed him as a trespasser in front of the other players, coaches, umpires, and scouts who were present.  (*See id.* ¶ 22.)  Mr. Radford then informed Plaintiffs that Reid would be forcibly removed from the player housing if he did not voluntarily vacate the premises.  (*See id.* ¶ 23.)  Consequently, Plaintiff David Nelson was forced to buy a last-minute plane ticket to South Carolina to pick up his son and bring him back to Connecticut.  (*See id.* ¶ 24.)

## II.   Discussion

Defendant moves pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(3) to dismiss this action, arguing that this Court lacks personal jurisdiction and

---

[2]  Defendant claims that Plaintiff Reid Nelson was removed from the camp as a result of his abusive, belligerent, and threatening conduct.  (*See* Def.'s Mem. Supp. [Doc. # 21] at 2.)  However, Plaintiffs allege in their Complaint that Plaintiff Reid Nelson was removed despite having done nothing wrong.  (*See* Compl. ¶ 21.)  For the purposes of this motion to dismiss, the Court accepts the facts alleged in the Complaint as true.  *See Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006) (courts considering a motion to dismiss under Rule 12(b) "accept[] as true the factual allegations in the complaint and draw all inferences in the plaintiff's favor").

that venue for this dispute does not lie in the District of Connecticut.  Alternatively, Defendant requests that the Court transfer this action to the more convenient forum of North Carolina.

### A.    Personal Jurisdiction

When deciding a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the Court conducts a two-part analysis.  *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 305 F.3d 120, 124 (2d Cir. 2002).  First, the Court applies Connecticut's long-arm statute.  *Id.*  If the Court finds that the long-arm statute applies, the Court must then decide whether the exercise of jurisdiction over the defendant comports with the constitutional requirements of due process.  *Id.*  "When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant."  *Id.* at 784.  When a court does not conduct a "full-blown evidentiary hearing" on the motion, the plaintiff need only make out "a prima facie showing that the court possesses personal jurisdiction over the defendant."  *DiStefano v. Carozzi North America, Inc.,* 286 F.3d 81, 84 (2d Cir. 2001) (quoting *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir. 1981)).  Such a showing must be made by alleging facts, not simply conclusions, but the Court "construe[s] jurisdictional allegations liberally and takes as true uncontroverted factual allegations."  *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507 (2d Cir. 1994) (internal citations omitted).

### 1.   Connecticut's Long-Arm Statute

Connecticut's long-arm statute provides, in pertinent part, that

a court may exercise personal jurisdiction over any nonresident individual, foreign partnership or foreign voluntary association, . . . who in person or

4

> through an agent:  (1) Transacts any business within the state; (2) commits
> a tortious act within the state . . .; (3) commits a tortious act outside the
> state causing injury to person or property within the state . . . if such
> person or agent (A) regularly does or solicits business, or engages in any
> other persistent course of conduct, or derives substantial revenue from
> goods used or consumed or services rendered, in the state, or (B) expects
> or should reasonably expect the act to have consequences in the state and
> derives substantial revenue from interstate or international commerce.

Conn. Gen. Stat. § 52-59b(a).[3]  Defendant argues that Plaintiffs have failed to establish that its conduct satisfies the requirements of § 52-59b(a)(1), (a)(2), or (a)(3).[4]

(a)    Transacts Business Within the State

Pursuant to § 52-59b(a)(1), a Connecticut court may exercise personal jurisdiction over a defendant that transacts any business in this state.  Although the phrase "transacts any business" in § 52-59b(a)(1) is not defined, the Connecticut Supreme Court has construed the term to embrace even  "a single purposeful business transaction." *Zartolas v. Nisenfeld*, 184 Conn. 471, 474 (1981).  "A purposeful business transaction is one in which the defendant has engaged in some form of affirmative conduct allowing or promoting the transaction of business within the forum state." *Nusbaum & Parrino, P.C. v. Collazo De Colon*, 618 F. Supp. 2d 156, 162 (D. Conn. 2009) (quoting *Health Communs., Inc. v. Chicken Soup for the Soul Publ'g, LLC*, No. X06CV084014539S, 2009 WL 579227, *22 (Conn. Super. Ct. Feb. 9, 2009)).  "Moreover, a nonresident individual who has not entered this state physically nevertheless may be subject to jurisdiction in

---

[3] Section 52-59b does not specifically address whether it applies to foreign limited liability companies ("LLCs"), such as Defendant.  However, the parties agree that § 52-59b is the governing statute for the purposes of the jurisdictional analysis in this case. *See, e.g.*, *Austen v. Catterton Partners V, LP*, 729 F. Supp. 2d 548, 553–59 (D. Conn. 2010).

[4] Because the Court finds that jurisdiction is proper under subsections (a)(1) and (a)(2), it need not address the parties' arguments regarding subsection (a)(3).

5

this state under § 52–59b(a)(1) if that individual has invoked the benefits and protection of Connecticut's laws by virtue of his or her 'purposeful Connecticut related activity.'" *Ryan v. Cerullo*, 282 Conn. 109, 120 (2007) (internal citations and quotation marks omitted). Further, if a defendant is found to have transacted business in Connecticut, the cause of action against the defendant must arise from its business activity in this state. *See id.* at 121–22.

Plaintiffs argue that Defendant's efforts to advertise in Connecticut, in addition to its contract with Plaintiffs and its maintenance of an interactive website constitute "transacting business" in Connecticut for the purpose of exercising personal jurisdiction under § 52-59b(a)(1). Plaintiffs allege that Defendant recruits baseball players in Connecticut by sending out its advertising materials and contracts to colleges in the state. (*See* Compl. ¶¶ 10–11.) Typically, courts in Connecticut have held that merely advertising services in the state alone is insufficient to subject a defendant to personal jurisdiction under §52-59b(a)(1). *See Gates v. Royal Palace Hotel*, No. CV 9866595S, 1998 WL 951002, at *3 (Conn. Super. Ct. Dec. 30, 1998) ("The reported cases which deal with advertising as forming the basis for the concept of transacting business all appear to involve additional elements above and beyond mere minimal interstate advertising."). For example, in *Gates*, the court determined that when combined with the active booking of reservations for Connecticut residents through Connecticut travel agencies and the invitation to Connecticut citizens to make reservations via its website, the fact that the defendant targeted its advertising to Connecticut residents constituted the transaction of business in the state. *See id.* at *4. Similarly, in this case Defendant, rather than passively advertising in the Connecticut media market, specifically targeted several Connecticut

organizations with its marketing materials (*see* Compl. ¶ 11), entered into a contractual relationship with Connecticut residents, and ran a website through which Connecticut residents could pay for its program and watch games via livestream (*see* Screenshot of Def.'s Website, Ex. A to Pls.' Opp'n).   Thus, Plaintiffs have alleged sufficient facts in addition to Defendant's interstate advertising in Connecticut to establish that Defendant transacted business in the state.

Furthermore, Defendant's website alone is sufficient to subject Defendant to personal jurisdiction in this state pursuant to § 52-59b(a)(1).   "[Courts] in this district have adopted the *Zippo* test in determining whether the exercise of personal jurisdiction is proper, both for purposes of the long-arm statute inquiry and the due process inquiry." *Lis v. Delvecchio*, No. 3:11cv00157 (AWT), 2012 WL 3309384, at *3 (D. Conn. Aug. 13, 2012).   In *Zippo Mfg. Co. v. Zippo Inc.*, 952 F. Supp. 1119 (W.D. PA 1997), the court announced the "spectrum of internet activity" analysis for determining if a defendant's internet conduct is sufficient to support an exercise of personal jurisdiction:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet.   If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper.   At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions.   A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction.   The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer.   In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id.* at 1124.   Based on the record before the Court, Defendant's website occupies the middle ground of an "interactive website."   The website permits the exchange of information in that it includes a Twitter feed where people communicate with each other and with Defendant regarding the league.   (*See* Screenshot of Def.'s Website.)[5]   The website also provides for the transmission of video files by hosting a live stream of league games.   (*See id.* (showing link to "Beach League TV").)   Further, Defendant's website permits users to pay league fees online.   (*See id.* (showing link to "Pay League Fees").)   Thus, Defendant's website contemplates interactivity on several levels, including through commercial transactions.   When considered in the context of Defendant's targeted advertising in Connecticut, and its contractual relationship with Plaintiffs, such a website supports a finding of personal jurisdiction pursuant to § 52-59b(a)(1).

(b) Tortious Acts Within Connecticut

This Court also has personal jurisdiction over Defendant pursuant to § 52-59b(a)(2), which provides that a Connecticut court may exercise jurisdiction over a defendant that commits a tortious act within the state.   The gravamen of Plaintiff's CUTPA and fraud claims is that Defendant solicited business in this state by circulating false advertising that misled potential customers regarding the size of the league and the playing time each participant would receive.   Defendant argues that because the alleged misrepresentations were made outside of Connecticut, even though they were directed at people inside Connecticut, they are insufficient to establish personal jurisdiction under §

---

[5] Plaintiffs have also submitted screen shots of a later version of Defendant's website that allowed players to register online and purchase league merchandise. However, because these exhibits post-date the Complaint, the Court will not consider them in its jurisdictional analysis.

52-59b(a)(2).  Although the Connecticut Supreme Court has not yet spoken on the issue of whether a defendant must be physically present in Connecticut for a tort to be "committed" in Connecticut for the purposes of § 52-59b(a)(2), the majority of courts to consider this question have recognized that tortious communications that enter the state are sufficient to support a finding of personal jurisdiction under § 52-59b(a)(2).  *See Rios v. Fergusan*, 51 Conn. Supp. 212, 218 n.6, 219 (2008); *see also id.* at 218 ("Several Connecticut courts have held that a nonresident commits a tortious act within the state for purposes of § 52-59b(a)(2) by sending a communication whose content may be considered tortious directly into Connecticut." (internal citations and quotation marks omitted)).

In *Vertrue Inc. v. Meshkin*, 429 F. Supp. 2d 479 (D. Conn. 2006), for example, the district court held that "[i]t is well-established that false or fraudulent misrepresentations transmitted to Connecticut by mail, wire[,] or telephone constitute 'tortious conduct in Connecticut sufficient to establish personal jurisdiction under Connecticut's long-arm statute.'" *Id.* at 492 (internal citations omitted).  The court further recognized that "Connecticut federal district courts have consistently held that it is proper to assert personal jurisdiction pursuant to § 52-59b(a)(2) over a nonresident defendant who transmits fraudulent representations to a Connecticut resident for the purpose of inducing that resident to act." *Id.* (collecting cases).  Here, Plaintiffs contend that the Defendant targeted Connecticut residents with false marketing and advertisements regarding the size of the league to induce them to enroll in its programs.  Based on the weight of the authority in this district, such actions constitute tortious conduct within the state for the purposes of establishing personal jurisdiction under § 52-59b(a)(2).

9

Therefore, Plaintiffs have asserted sufficient facts to show that this Court has personal jurisdiction over Defendant under both § 52-59b(a)(1) and § 52-59b(a)(2).

### 2.   Due Process

Having established that personal jurisdiction exists over Defendant pursuant to the long-arm statute, the Court must next determine whether the exercise of jurisdiction satisfies with the requisites of due process.   The due process analysis consists of two elements:  (1) whether Defendant has sufficient "minimum contacts" with Connecticut, and if so, (2) whether the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

### (a)      Minimum Contacts

To establish the requisite "minimum contacts" to satisfy the dictates of due process, "a defendant's conduct and connection with the forum State [must be] such that [it] should reasonably anticipate being haled into court there." *Id.* at 474.  "[I]t is essential in each case that there be some act by which the defendant *purposefully avails* itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of the laws." *Bensmiller v. E.I. Dupont de Nemours & Co.,* 47 F.3d 79, 84–85 (2d Cir. 1995) (emphasis in original) (quoting *Hanson v. Denckla,* 357 U.S. 235, 254 (1958)).  "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp.*, 471 U.S. at 475 (internal citations and quotation marks omitted).  "Jurisdiction is proper, however,

where the contacts proximately result from actions by the defendant [itself] that create a 'substantial connection' with the forum State." *Id.*

Defendant argues that Plaintiffs failed to allege that it has any contacts with Connecticut, "other than unsupported allegations" that it contracts with colleges in thirty-two states, including Connecticut. (Def.'s Mem. Supp. at 6–7). Defendant further asserts that it does not maintain an office in Connecticut, does not have any physical presence in Connecticut, is not registered to do business in Connecticut, and does not actively solicit business from Connecticut. (*See id.* at 7.) As such, Defendant claims that it has not "purposefully availed" itself of the privilege of conducting activities in Connecticut such that it could foresee being haled into court in this state.[6]

However, contrary to Defendant's characterization of the allegations in the Complaint, Plaintiffs have alleged that Defendant actively markets its summer program to Connecticut organizations and residents. These contacts are not the kind of "random, fortuitous, or attenuated contacts" or "unilateral activity . . . of a third person" that the purposeful availment requirement was designed to prevent. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 128 (2d Cir. 2002). Defendant sought to be known in the Connecticut college baseball market, and made efforts to promote and maintain a client base there. Under these circumstances, there is nothing fundamentally unfair about requiring the Defendant to defend itself in Connecticut when the dispute arises from contractual obligations "which developed in a market that it deliberately

---

[6] Defendant has not supported these claims, made in its memorandum of law, with affidavits or other sworn testimony. Plaintiff's claim that Defendant contracts with colleges in thirty-two states is taken from Defendant's own website. (*See* Ex. A to Pls.'s Opp'n.)

cultivated and . . . voluntarily undertook." *Id.* at 129 (holding that because a Puerto Rico law firm made efforts to promote and maintain a client base in the New York legal market, it purposefully availed itself of the jurisdiction of New York courts).  Here, the Complaint alleges that Defendant specifically marketed its summer program to college students in Connecticut and established channels for exchanging information to customers in Connecticut through its website.  Such conduct "indicates an intent or purpose to serve the market in the forum state" that is sufficient to support the conclusion that Defendant had the requisite minimum contacts with Connecticut. *Divincino v. Polaris Industries*, 129 F. Supp. 2d 425, 433 (D. Conn. 2001) (internal citations omitted).

Furthermore, Defendant's website alone may satisfy the minimum contacts requirement.  As the court reasoned in *Divincino*, a defendant's website may serve as the basis for establishing minimum contacts in a state:

> Creating a [web] site, like placing a product into the stream of commerce, may be felt nationwide-or even worldwide-but, without more, it is not an act purposefully directed toward the forum state. . . . [T]here must be additional evidence of purposeful availment, such as evidence showing that Connecticut users accessed the site, that they purchased products based on the web site advertisement, or that the web site advertisement was directed at Connecticut more so than any place else in the nation.

*Id.*  The Complaint alleges that Plaintiffs accessed the site, and the Court can infer that the site targeted other Connecticut residents who had children in the league by hosting videos of their children's games.  As the *Divincino* court noted, "[a]lone, each form of advertising may not be sufficient to evidence purposeful availment . . . [but] when the advertisements and websites are considered in their totality, they demonstrate that [the

12

defendant] was reaching out to customers" in Connecticut. *Id.* at 433–34.[7] Finally, as discussed above, the *Zippo* test, which also applies to the due process analysis, supports the exercise of jurisdiction on the basis of Defendant's interactive website. Therefore, the combination of Defendant's advertising efforts in Connecticut and the operation of its interactive website is sufficient to establish "minimum contacts" with Connecticut.

(b)    Reasonableness

The second part of the jurisdictional analysis asks "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable under the circumstances of the particular case." *Bank Brussels Lambert*, 305 F.3d at 129. Courts consider five factors when evaluating reasonableness: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's

---

[7] Defendant also argues that it did not engage in the type of "continuous and systematic" contacts required for the exercise of general jurisdiction. (Def.'s Mem. Supp. at 6–7). However, this argument fails because Plaintiffs are not attempting to assert general jurisdiction over Defendant. Since Plaintiffs' claims arise directly out of Defendant's contacts that gave rise to this suit, this is a case of specific jurisdiction and "continuous and systematic" contacts are not needed in order for the Court to exercise personal jurisdiction in this case. *See Bank Brussels Lambert*, 305 F.3d 120 at 127 ("Where the claim arises out of, or relates to, the defendant's contacts with the forum—i.e., specific jurisdiction—minimum contacts exist where the defendant 'purposefully availed' itself of the privilege of doing business in the forum and could foresee being 'haled into court' there. A state may assert 'general jurisdiction'—i.e., jurisdiction irrespective of whether the claim arises from or relates to the defendant's forum contacts—only where these contacts are 'continuous and systematic.'" (internal citations and quotation marks omitted)). Furthermore, to exercise specific jurisdiction, the contacts do not have to directly give rise to the Plaintiffs' cause of action, it is enough that they simply relate to it. *Id.* at 128.

interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 730–31 (2d Cir. 2012). "While the exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts at the first stage of the inquiry, it may be defeated where the defendant presents a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 2005) (internal citations and quotation marks omitted).

Defendant argues that litigating this case in Connecticut would constitute a significant burden because it has no contacts in Connecticut and the majority of witnesses are located outside of Connecticut. (*See* Def.'s Mem. Supp.at 7.)  Plaintiffs counter that imposing jurisdiction will not burden Defendant because it services clients from all fifty states and foreign countries.  (*See* Pls.' Opp'n at 14.)  Although Defendant's records and some of its witnesses are located in North and South Carolina, "the conveniences of modern communication and transportation ease what [otherwise] would have been a serious burden [years ago]."  *Metropolitan Life Ins. Co.*, 84 F.3d at 573–74.  Thus, this factor cuts only slightly in favor of Defendant.  Taken alone, it falls short of overcoming Plaintiffs' threshold showing of minimum contacts.  *See id.* at 574.

Plaintiffs argue that Connecticut has an interest in adjudicating this action because their primary claim is a CUTPA violation.  Because this action is governed by Connecticut statutory and common law, Connecticut has a strong interest in adjudicating this dispute.  *See Inset*, 937 F. Supp. at 165; *Divincino*, 129 F. Supp. 2d at 435; *see also Hardy*, 20 F. Supp. 2d at 342–43 (holding that the forum state has an interest in insuring a

14

remedy for its citizens for injury caused by foreign tortfeasors). Plaintiffs also argue that because they are individuals, they will have substantial difficulty litigating this matter in another venue, and the majority of their witnesses may be college-aged Connecticut residents who participated in the Defendant's summer baseball programs. (*See* Pls.' Opp'n at 14–15.) As Connecticut residents, Plaintiffs have an interest in obtaining convenient and effective relief in this state. As to the fourth and fifth factors, Plaintiffs argue that Connecticut's exercise of personal jurisdiction over Defendant does not create inefficiencies in obtaining a resolution of the matter, and that Connecticut has an interest in ensuring that social policies like combatting unfair trade practices are achieved. Since this action concerns issues of Connecticut statutory and common law, adjudication in Connecticut would likely dispose of this matter efficiently. *See Inset*, 937 F. Supp. at 165.

Thus, Defendant has not established the "exceptional situation" where the exercise of jurisdiction is unreasonable even though minimum contacts are present. *See Bank Brussels Lambert*, 305 F.3d at 130. The exercise of personal jurisdiction over Defendant therefore comports with notions of fair play and substantial justice. Because the requirements of the Connecticut long-arm statute and due process are satisfied, Defendant's motion to dismiss for lack of personal jurisdiction is denied.

### B.      Improper Venue

Defendant also moves pursuant to Rule 12(b)(3) to dismiss for improper venue.[8] Pursuant to 28 U.S.C. § 1391(b)(2) "[a] civil action may be brought in . . . a judicial

---

[8] "The same standard [] is applied to a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3) as is applied to dismissals for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2)." *Marcus v. American Contract Bridge League*, 562 F.

15

district in which a substantial part of the events or omissions giving rise to the claim occurred."   Defendant argues that since it is not a resident of Connecticut, its summer baseball league is located in North Carolina, and the alleged wrongdoing occurred in North Carolina, venue properly lies in North Carolina.[9]   (Def.'s Mem. Supp. at 8–9.) Plaintiffs concede that Defendant's wrongful conduct was not limited to Connecticut, but argue that a substantial portion of the wrongdoing took place in Connecticut because Defendant's false advertising campaign was conducted in this state.     "Venue may properly exist in more than one district, and thus the plaintiff is not required to establish that his chosen venue has the most substantial contacts to the dispute; rather, it is sufficient that a substantial part of the events occurred [in the venue where suit was brought], even if a greater part of the events occurred elsewhere." *Indymac Mortgage Holdings, Inc. v. Reyad*, 167 F. Supp. 2d 222, 237 (D. Conn. 2001) (internal citations omitted).  Here, while the summer baseball league is physically located in South Carolina, the marketing and contracting took place in Connecticut.   Thus, venue is proper in the District of Connecticut, and the Court denies Defendant's motion to dismiss for improper venue.

---

Supp. 2d 360, 362–63 (D. Conn. 2008) (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir. 2005)).

[9] While Defendant's principal place of business is located in North Carolina, the baseball camp and player housing—the only places where Reid Nelson traveled in connection with this dispute—were both located in South Carolina.

16

**C.      Venue Transfer**

Finally, Defendant moves in the alternative pursuant to 28 U.S.C. § 1404(a) to transfer this action to North Carolina.[10]  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  "In determining whether a transfer of venue pursuant to 28 U.S.C. § 1404(a) is appropriate, district courts engage in a two-part inquiry, asking: (1) whether [the] action might have been brought in the proposed transferee forum, and, if so, (2) whether the transfer promotes convenience and justice." *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 266 (D. Conn. 2012) (internal citations and quotation marks omitted).[11]  Defendant bears the burden of establishing by clear and convincing evidence that transfer would be proper.  *N.Y. Marine & General Ins. Co. v. Lafarge North America, Inc.*, 599 F.3d 102, 114 (2d Cir. 2010).  When considering whether a transfer promotes convenience and fairness, district courts consider, *inter alia*: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) the relative means of the parties, (8) the forum's familiarity with the governing law, and (9) the efficiency and the interests of justice, based

---

[10] Defendant does not specify in his briefing whether he seeks transfer to the Eastern, Middle, or Western District of North Carolina.

[11] The parties agree that this suit could have been brought in North Carolina on the basis of Defendant's residency in that state.

on the totality of the circumstances. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106–07 (2d Cir. 2006).

### 1.       Plaintiff's Choice of Forum

"In considering a motion to transfer, a district court ordinarily affords the plaintiff's choice of forum substantial weight." *Costello*, 888 F. Supp. 2d at 267; *see also Indymac*, 167 F. Supp. 2d at 240.

### 2.       The Convenience of Witnesses

Defendant argues that all of its anticipated witnesses are located in North Carolina, and that given the travel time and costs associated with air travel, requiring Defendant to produce its witnesses in Connecticut would be burdensome for Defendant and its witnesses. Plaintiffs counter that the Defendant has not asserted how many of its witnesses are located in North Carolina or how material those witnesses are to this matter, and that therefore the Court should give little weight to Defendant's assertions. Plaintiffs also assert that transfer of venue to North Carolina would create an equal hardship on its own witnesses, many of whom are college students from Connecticut who participated in the summer baseball league. "A party moving for transfer on the ground of the convenience or availability of witnesses must specify the identity of key witnesses and the nature of their likely testimony, and support these statements with affidavits." *Costello*, 888 F. Supp. 2d at 267. Here, Defendant has not specified the identity of any of its key witnesses, or described the nature of their likely testimony. Further, there are likely relevant witnesses located in both fora. Thus, Defendant has not met its burden to establish that this factor weighs in favor of a transfer.

   3.      *The Location of Relevant Documents*

Defendant acknowledges that modern technology limits the weight of this factor. *See Wilson v. DirectBuy, Inc.*, 821 F. Supp. 2d 510, 517 (D. Conn. 2011).  Nevertheless, Defendant argues that because police reports from the Myrtle Beach Police would be a source of proof in this case this factor weighs in favor of transfer.  However, Defendant fails to explain how police reports differ from all other documents in the digital age that can be easily produced in an electronic format.  Further, as Plaintiffs point out, the Myrtle Beach Police are not even located in the proposed transferee forum.  Given the realities of electronic discovery, this factor does not weigh in favor of either forum.

   4.      *The Convenience of the Parties*

Defendant argues that North Carolina is a more convenient forum because its witnesses and evidence are located in North Carolina.  In contrast, Plaintiffs argue that Connecticut is a more convenient forum because Reid Nelson is a college student and would likely be forced to take a significant amount of time off from school to travel to North Carolina.  A transfer order should not be used "to do nothing more than shift the burden of inconvenience from one party to another."  *Pitney Bowes, Inc. v. National Presort, Inc.*, 33 F. Supp. 2d 130, 132 (D. Conn. 1998).  Here, it appears that no matter where this case is located, inconvenience is unavoidable.  *See id.*

   5.      *The Locus of Operative Facts*

Defendant argues that the locus of operative facts is North Carolina, while Plaintiffs argue that the locus of operative facts is Connecticut.  Plaintiffs further argue that even if some of the relevant events occurred outside Connecticut, they took place in

19

South Carolina, rather than in North Carolina as Defendant claims.[12]  "To determine the locus of operative facts, courts look to where the events from which the claim arises occurred."  *Costello*, 888 F. Supp. 2d at 268 (internal citations omitted).  The events giving rise to this claim occurred in South Carolina, North Carolina, and Connecticut.  Because the baseball league did not take place in the proposed transferee forum, and because the nature of the events occurring in both North Carolina and Connecticut appear to be very similar—i.e., the negotiation of contracts and the distribution of advertising—this factor does not weigh heavily in favor of either forum.

> 6.    *The Availability of Process to Compel the Attendance of Unwilling Witnesses*

The parties raise the same arguments here as were raised in the discussion of the second factor.  It is likely that there are witnesses with relevant information in both fora.  However, because neither party has identified any non-party witnesses, the availability of process to compel attendance of unwilling witnesses does not clearly weigh in favor of either forum.  *See id.* at 267.

> 7.    *The Relative Means of the Parties*

Both parties agree that the relative means of the parties are unknown, and thus this factor does not weigh in favor of either forum.

> 8.    *The Forum's Familiarity with Governing Law.*

 "The 'governing law' factor is to be accorded little weight on a motion to transfer venue because federal courts are deemed capable of applying the substantive law of other states."  *MAK Marketing, Inc. v. Kalapos*, 620 F. Supp. 2d 295, 311–12 (D. Conn. 2009).

---

[12]   The actual baseball league that is the subject of this suit was located in South Carolina.

However, Plaintiffs' claims are based on Connecticut statutory and common law, and therefore even if this Court were to give weight to this factor, it can hardly be said to weigh in favor of a transfer out of Connecticut.

9.    *Trial Efficiency and the Interest of Justice*

Defendant argues that since discovery has not yet begun, it would be more efficient to transfer this case to the "appropriate forum."  Moreover, Defendant asserts that since this Court does not have personal jurisdiction over it, it is most efficient to transfer this case to the District of North Carolina where jurisdiction lies.  However, aside from restating its arguments regarding personal jurisdiction, Defendant fails to establish how it would be more just or efficient to try this case in North Carolina.

Therefore, Defendant has not met its burden to show that this case should be transferred to North Carolina, and Defendant's alternative request for relief is denied.

**III.    Conclusion**

For the foregoing reasons, Defendant's Motion [Doc. # 20] to Dismiss or to Transfer Venue is DENIED.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 4th day of December, 2013.

21